**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

ANTHONY RAY MILLER                                                                                    PLAINTIFF
#118266

v.                                             4:23-cv-00887-BRW-JJV

DEVORE, Deputy,
Pulaski County Sheriff; *et al.*                                                                    DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.     INTRODUCTION**

Anthony Ray Miller ("Plaintiff") is a pretrial detainee in the Pulaski County Detention Facility. He has filed a *pro se* Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants Deputy Darius Lang, Sergeant Jeremiah Buckner, and Deputy Edward Hester violated his constitutional rights by using excessive force against him on September 5, 2023. (Doc. 4.) Plaintiff brings this claim against Defendants in their individual capacities only. (*Id*.) And all other claims and Defendants have been previously dismissed without prejudice. (Doc. 7.)

1

Defendants have filed a Motion for Summary Judgment arguing they are entitled to dismissal based on the doctrine of qualified immunity. (Docs. 16-18.) Plaintiff has not filed a Response, and the time to do so has expired. *See* Local Rule 7.2(b) (response to a motion is due fourteen days after service). Thus, the facts in Defendants' Statement of Indisputable Material Facts (Doc. 18) are deemed admitted. *See* Local Rule 56.1(c); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001). And those facts are supported by the record. After careful review and consideration, I recommend the Motion be GRANTED, Plaintiff's excessive force claim against the remaining Defendants be DISMISSED with prejudice, and this case be CLOSED.

II.   **SUMMARY JUDGEMENT STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

### III.    ADMITTED FACTS

The following facts are taken from Defendants' Statement of Indisputable Material Facts (Doc. 18), which is supported by Defendants' affidavits (Doc. 18-7, 18-8, 18-9), multiple incident reports prepared by Defendants and non-party officers (Doc. 18-5), a surveillance video recording (Doc. 19), body camera footage from Defendants and non-party officers (Doc. 19), and the medical records (Doc. 18-4.)

On September 5, 2023, at 10:17 p.m., Plaintiff refused to return to his cell after receiving two direct orders from Defendant Lang to do so. After the third order, Plaintiff starting walking to his cell with Defendants Lang and Hester standing on either side of him. As they passed through the large two-story dayroom containing multiple unrestrained detainees sitting on bedding and on the floor, Plaintiff continued to argue with Defendant Lang about not wanting to return to his cell. Defendant Lang then put his hand on the side of Plaintiff's back to guide him along. In response, Plaintiff pushed Defendant Lang with his elbow, locked his legs, and began to physically resist Defendants Lang and Hester, who grabbed Plaintiff by each arm. A struggle ensued between the threesome, causing Plaintiff and Defendant Lang to fall onto the base of a flight of stairs. Around 10:19 p.m. several other non-party officers arrived to assist. Plaintiff refused to comply with the officers' orders to submit to handcuffs, physically resisted their efforts to restrain his hands, and yelled at them.

At approximately 10:20 p.m., officers were able to handcuff one wrist and raise Plaintiff to a standing position. As the officers attempted to handcuff the other wrist, Plaintiff said, "Man, y'all can't put no cuffs on me. It's gonna take ten of you," and he became physically combative. Defendant Hester, with the assistance of other officers, took Plaintiff to the floor to regain control. While there, Plaintiff continued to struggle and resist Defendant Lang's and Buckner's attempts

3

to restrain his hands. Defendant Buckner then used a wrist lock[1] to secure the second handcuff, and at 10:21 p.m., the officers raised Plaintiff to a standing position with his arms handcuffed in front of his body.

Once standing, Plaintiff shoved Defendant Buckner in the chest and accused him of trying to break his wrist. In response, Defendant Buckner grabbed Plaintiff's handcuffs to prevent him from striking out again, and multiple officers tried to physically restrain Plaintiff. A non-party officer then sprayed Plaintiff with a single burst of O.C. spray, which also hit Defendant Hester, Defendant Buckner, and some of the nearby officers. Defendant Buckner then took Plaintiff to the floor a second time. This time Plaintiff stopped resisting.

Around 10:22 p.m., Plaintiff was seated in a chair surrounded by several officers. A nurse flushed the chemicals from his eyes but soon determined Plaintiff was too uncooperative to continue treatment. She then completed a visual assessment and medically cleared him to return to his cell. While waiting for a wheelchair, Plaintiff attempted to stand up from his chair and slid onto the floor. When Plaintiff refused to obey the officers' orders to return to his chair, Defendant Buckner performed a second wrist lock to regain control. In response, Plaintiff scratched Defendant Buckner's hand, drawing a small amount of blood, and continued to argue. At 10:26 p.m., Plaintiff, who was still surrounded by three officers, attempted to stand up from his chair a second time. A non-party officer pushed him back into his seat, while a second non-party officer "dry fired" a taser into the air to get Plaintiff's attention. At 10:27 p.m., Plaintiff was put into a wheelchair, taken to a single-man cell, and strip searched without incident. The video recordings and a photograph taken while Plaintiff was being medically assessed do not show any visible

---

[1] A wrist lock is "a defensive tactic that pushes the fingers down and pulls or pushes the wrist toward the forearm to gain control and/or compliance." (Doc. 18-9 at 1.) It is an "empty hand control technique that is low on the use of force continuum." *Id.*

4

injuries, other than a small amount of blood on his bottom lip.

On September 6 and 8, 2023, Plaintiff filed two sick call requests seeking treatment for pain in his back, mouth, head, wrist, elbow, shin, and chest.  An examining nurse noted Plaintiff had a small, closed abrasion on the inside of his lip.  The nurse also recorded that Plaintiff was able to move his wrists and fingers, he had good capillary refill, and there was no visible swelling or bruising,

### IV.    QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity from the excessive force claim raised against them in their official capacities.   Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide.   *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).   The defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to the plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful.   *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dept.*, 987 F.3d 767, 770 (8th Cir. 2021).   Defendants say they are entitled to qualified immunity based on the first prong, and I agree.

Because Plaintiff was a pretrial detainee, his excessive force claim falls under the due process clause of the Fourteenth Amendment.  See *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015); *Glover v. Paul*, 78 F.4th 1019, 1021-22 (8th Cir. 2023).   Under this standard, a pretrial

detainee must show "the force purposely or knowingly used against him was objectively unreasonable" based on "the circumstances of each particular case," without considering the defendants' subjective intent. *Kingsley*, 576 U.S. at 395-97; *see also Glover*, 78 F.4th at 1021. In other words, the salient issue is whether the force was "rationally related to a legitimate nonpunitive governmental purpose" and not "excessive in relation to that purpose." *Kingsley,* 576 U.S. at 398. When making that determination, the fact finder may consider the relationship between the need for force and the amount of force used, the extent of the detainee's injury, any effort made by the officers to temper or limit the amount of force used, the severity of the security problem at issue, the threat reasonably perceived by the officers, and whether the detainee was actively resisting. *Kingsley,* 576 U.S. at 397; *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017).

It was well settled, in September of 2023, that officers may use force to regain control of a noncompliant pretrial detainee who jeopardizes the security of the officers and/or facility. *See, e.g., Parrish v. Dingman,* 912 F.3d 464, 468 (8th Cir. 2019) (no constitutional violation when an officer pushed a pretrial detainee, who was attempting to escape his cell, against the wall and took him to the floor because officers have "an important interest in maintaining order and institutional security within the jail"); *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (no constitutional violation when officers restrained, held down, and twice tased a combative pretrial detainee, who refused to be handcuffed and removed from his cell); *Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) (no constitutional violation when an officer used an arm-bar maneuver to take a detainee to the floor after he "refused to comply with directions, loudly abused the correctional officers, and aggressively leapt towards" one of them).

Here the admitted facts establish force was necessary to regain control of Plaintiff, who

refused to return to his cell, physically resisted attempts by multiple officers to handcuff him, remained noncompliant even when taken to the floor, and ultimately shoved an officer. And, importantly, those admitted facts are supported by several videos of the altercation. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (granting summary judgment in an excessive force case when video recordings supported the defendants' version of events). Plaintiff's combative behavior caused a serious security risk to the responding officers, as well as the other detainees in the day room where the altercation occurred. And it is undisputed Defendants gradually increased the amount of force used as Plaintiff's behavior escalated, resulting in only minor injuries to him. *See Williams v. Jackson,* 600 F.3d 1007, 1012 (8th Cir. 2010) (extent of the plaintiff's injury is indicative of the amount of force used). Based on this record, I find no reasonable juror could rule in Plaintiff's favor. Accordingly, I conclude Defendants are entitled to qualified immunity, and I recommend Plaintiff's excessive force claim against them be dismissed with prejudice.

V.      **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED THAT:

1.      Defendants' Motion for Summary Judgment (Doc. 16) be GRANTED.

2.      Plaintiff's excessive force claim against Defendants Lang, Buckner, and Hester be DISMISSED with prejudice, and this case be CLOSED.

3.      The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 29th day of July 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE